IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:98 CV 122 MU

FILED
CHARLOTTE, N. C.

SEP 30 1999

U. S. DISTRICT COURT
W. DIST. OF N. C.

| | |
|---|---|
| EDWARD L. FRIEDLAND, )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF CHARLOTTE, a )<br>North Carolina Municipal Corporation, )<br><br>Defendant. ) | **PLAINTIFF'S RESPONSE TO<br>DEFENDANT'S MOTION FOR<br>JUDGMENT ON THE PLEADINGS<br>OR, IN THE ALTERNATIVE, TO<br>ABSTAIN** |

I

## INTRODUCTION

On March 24, 1998, plaintiff Edward Friedland filed a thirty-one page complaint in this Court, alleging that the defendant City of Charlotte had violated his constitutional rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The complaint was based on the Charlotte police withholding material exculpatory evidence from the Mecklenburg County District Attorney, which plaintiff alleged had misled the District Attorney and thereby caused plaintiff to be indicted and arrested for capital murder when he otherwise would not have been. Plaintiff further alleges that the arrest was without probable cause. The

50

factual and legal bases of the complaint were spelled out in detail.

On April 9, 1998, the City asked for and was granted an extension of time in which to file its answer to the complaint. On April 29, 1998, the City's answer was filed. Each paragraph of the complaint, and its subparts, were specifically addressed by the answer. Defendant City did not submit any memorandum of law in support of its boilerplate assertion that the complaint should be dismissed for failure to state a claim upon which relief could be granted, nor did the City seek any hearing on this issue.

Then, seventeen months later, after substantial discovery in this suit and a related state action specifically confirmed many of the factual assertions in plaintiff's complaint, and established that the Charlotte police had been deliberately indifferent to their constitutional obligation to preserve material exculpatory evidence and to provide such evidence to the prosecutor, defendant City filed its Motion for Judgment on the Pleadings or, in the Alternative, to Abstain. The motive for this motion, coming on the heels of Plaintiff's Motion for a Declaratory Judgment and for a Preliminary and Permanent Injunction, could not be more apparent. Defendant City, recognizing that the unconstitutional practices of the Charlotte police would finally be revealed and remedied, seeks to keep the pleadings secret and to further delay the issue being decided. The City's ploy should be rejected by this Court.

2

## II

## BACKGROUND

> *"If the law supposes that . . . then the law is a ass — a idiot."*
> Charles Dickens, The Adventures of Oliver Twist.

Defendant City of Charlotte would have this Court believe that neither the Fourth Amendment nor the Due Process Clause of the Fourteenth Amendment prohibits the police from misleading the District Attorney about the strength of the case against a suspect by withholding material evidence from the prosecutor who is given, under North Carolina law, the duty of deciding whether a citizen should be indicted and charged with a capital crime. Further, the City would have this Court believe that the Constitution does not prohibit the police from actively misleading the prosecutor when they are asked a direct question, in a circumstantial evidence case, about the existence of other suspects. To paraphrase Dickens, the law is not such "a ass."

The discovery in this and related cases has disclosed several simple but important facts. First, it is beyond doubt that critical material evidence was not provided by the Charlotte police to the Mecklenburg County District Attorney. This evidence went far beyond what is typically referred to as "exculpatory." It was not, for example, evidence which merely cast doubt on the reliability of an identification or on the credibility of a witness. In the totally circumstantial

3

case that the police attempted to build against Edward Friedland, knowledge of the strong evidence pointing to Marion Gales as the killer was essential to an informed charging decision by the prosecutor.

The material evidence regarding Gales which the police had within the first seventy-two (72) hours after the murder included, but was not limited to, the following: (1) his history of residential burglaries in the same neighborhood; (2) his history of violence against women; (3) an eyewitness identification of Gales as having worked at the Thomas home on Churchill Road the month before the murder; (4) information that Gales had previously shot a woman on the same road while burglarizing her house in an unforced entry; (5) information that Gales carried a knife; (6) information that Gales was seen wearing gloves (a bloody gloved print was found in the house) crossing Wendover Road in the direction of the Thomas house on Churchill Road at 3:45 a.m. on the day of the murder; (7) an eyewitness identification of Gales on Churchill Road, down the street from the Thomas home, at 5:30 a.m. on the day of the murder, posing as an undercover police officer in an attempt to lure a neighbor outside; (8) information that Gales stated shortly after the murder that he had "cut and beat somebody pretty bad"; and (9) information from Gales' own brother-in-law, who voluntarily came into the police station the day

4

after the murder, that he had personally seen Gales on the evening of the murder with blood on his clothes (the same clothes, a red shirt and tan pants, Gales was seen wearing at 5:30 a.m. that morning), that Gales had been acting strange the night before, and that he thought Gales had murdered Kim Thomas. Without that evidence, and additional information in the possession of the police that pointed to Gales as the perpetrator, the District Attorney was misled into believing that **all** the circumstantial evidence pointed **only** to Edward Friedland.[1]

Nor was this done accidentally. The discovery makes clear that the Mecklenburg County District Attorney had informed the Charlotte police in training materials that he would not indict a citizen unless there was a "reasonable likelihood of conviction" by a jury, "at least better than 50 percent." *See* Exhibit B, pg. 3 to Defendant's Response to Plaintiff's Motion for Declaratory Relief. The discovery also makes clear that the Sergeant in charge of the Homicide Unit did not feel there was a case that could be successfully

---

[1] The police also withheld from the District Attorney exculpatory evidence about Dr. Friedland that tended to undermine their theory that Dr. Friedland had murdered Kim Thomas. For example, several tape recordings of police interviews that contained exculpatory material about the relationship between Dr. Friedland and his wife were never transcribed.

5

prosecuted against Ed Friedland without evidence regarding the time of death. The lead detective stated in 1993, three years after the murder, that he believed the police would have to "beg" the District Attorney to indict Ed Friedland. After the charges were dismissed in March, 1995, District Attorney Peter Gilchrist sent a letter to Kim Thomas' father explaining that the charges were dropped because — other than evidence as to the time of death that had been excluded by the trial judge as unreliable — the rest of the case against Dr. Friedland was no more than "mere suspicion." Assistant District Attorney Richard Gordon, who handled the prosecution, made the same observation to the *Charlotte Observer*.

Finally, the discovery reveals that the failure of the Charlotte police to preserve and provide exculpatory evidence to the District Attorney had been an ongoing problem for years, that the Charlotte police had repeatedly ignored state judges who admonished them and imposed sanctions on the state because of their failure to preserve exculpatory evidence or to provide it to the District Attorney, that supervisors in the Charlotte police were aware of this, and that despite this, absolutely no training was done on the constitutional obligation of the police to preserve exculpatory evidence and to provide such evidence to the District Attorney. In short, the discovery has disclosed

6

deliberate indifference by the defendant City to its constitutional obligations.

It is with this backdrop, and with the words of Charles Dickens in mind, that the defendant's arguments must be evaluated.

III

## THE CHARLOTTE POLICE WERE UNDER A CONSTITUTIONAL OBLIGATION NOT TO MISLEAD THE DISTRICT ATTORNEY AND TO PROVIDE THE EVIDENCE RELATING TO GALES AND OTHER MATERIAL EXCULPATORY EVIDENCE TO THE DISTRICT ATTORNEY

Defendant argues that the police are constitutionally entitled to withhold exculpatory evidence and thereby mislead a district attorney to obtain an indictment in a capital case, and that there is no redress for the obvious damages that flow from their actions. In advancing this argument, much has been made by defendant of the restriction in *Albright v. Oliver*, 510 U.S. 266 (1994), on a plaintiff's ability to mount a substantive due process challenge to a wrongful prosecution. In *Albright* it made a crucial difference whether the claim could be grounded upon substantive due process or the Fourth Amendment, as Albright had chosen to abandon his Fourth Amendment claim. In this case, Dr. Friedland has raised both a procedural due process and a Fourth Amendment claim, and the uncontradicted facts show that he was not only charged with the capital murder of his wife, but was arrested, handcuffed,

7

placed in jail and then released only upon bond restricting his freedom. Whether the right not to face a prosecution obtained by misleading the district attorney is grounded in the Fourth Amendment or procedural due process is of no moment in determining whether Dr. Friedland is entitled to go forward with this litigation, as he has raised both claims. As will be discussed herein, while the courts have not been uniform — or even always clear — about the source of the right, numerous decisions make clear that the constitution prohibits the police from subjecting a citizen to a prosecution by misleading the district attorney.[2] Fourth Circuit law is not to the contrary.

## A. The Fourth Circuit Cases Relied Upon By The City Only Addressed When The Constitutional Obligation Of The Police To Provide Exculpatory Evidence To The District Attorney Was "Clearly Established"

In a masterful attempt to mangle Fourth Circuit law, the defendant City purportedly relies on *Osborne v. Rose*, 133 F.3d 916, 1998 WL 17044 (4th Cir.

---

[2] Recent commentary reaches the conclusion that *Albright* leaves open both Fourth Amendment and procedural due process claims based upon the wrongful initiation of a criminal prosecution. See John T. Ryan, Jr. Note, *Malicious Prosecution Claims Under Section 1983: Do Citizens Have Federal Recourse,* 64 GEO. WASH. L. REV. 776 (1996); Eric J. Wunsch, *Fourth Amendment and Fourteenth Amendment – Malicious Prosecution and § 1983: Is There A Constitutional Violation Remediable Under Section 1983?* 85 J. CRIM. L. & CRIMINOLOGY 878 (1995). This is consistent with the recent decision in *Britton v. Maloney,* 981 F. Supp. 25 (D. Mass. 1997), in which the Court found that *Albright* did not foreclose a claim based upon wrongful prosecution when there had been no arrest.

8

1998) (table opinion), *Jean v. Collins*, 155 F.3d 701 (4th Cir. 1998) (en banc),

*judgment vacated*, 119 S.Ct. 2016 (1999), and *Walker v. Sopher*, Nos. 95-

2248, 96-1088, 1998 WL 682283 (4th Cir. Sept. 23, 1998) (unpublished), for

the proposition that the Charlotte police are not under any constitutional

obligation to provide the District Attorney with material exculpatory evidence.

These cases, all of which deal with the "good faith immunity" issue of **when**

this constitutional obligation was "clearly established," stand for no such

proposition.

In *Osborne, Jean* and *Walker* the claims before the Court were against

individual officers who were entitled to good faith immunity. It is axiomatic

that whether such immunity applies depends on whether the constitutional right

violated by the police was "clearly established" at the time of the violation.

*DiMeglio v. Haines,* 45 F. 3d 790, 794 (4th Cir. 1995). If not, the police are

presumed to have acted in good faith, and are immune from a § 1983 claim.

No such immunity applies to plaintiff's claim against the City of Charlotte. If

the City had a policy, pattern or practice that in fact caused the violation of a

constitutional right, it does not matter whether that right was "clearly

established" or not. When it comes to skirting the constitutional rights of its

citizens, the City acts at its peril. *Owen v. City of Independence,* 445 U.S. 622

9

(1980) (municipality sued under § 1983 may not assert defense of qualified immunity based upon good faith of municipal officials).

Thus, for present purposes the important aspect of *Osborne*, *Jean* and *Walker* is that each recognized that the failure of the police to provide exculpatory evidence to the District Attorney may in fact violate the Constitution. Otherwise, there would have been no need for the court to reach the immunity issue. The claims would have been dismissed as a matter of law.

The opinion in *Osborne*, noting that *Albright v. Oliver*, 510 U.S. 266 (1994), foreclosed a malicious prosecution claim under § 1983 that was based only upon an alleged violation of **substantive** due process (but "left open" the question of whether such a claim could be brought under the Fourth Amendment), held that "in light of *Albright's* explicit reservation of this question, it cannot be read to establish clearly a Fourth Amendment right to be free from malicious prosecution." *Osborne*, 1998 WL 17044, **5.[3] *Osborne* did

---

[3] Justice Ginsburg assumed that Albright's choice of a substantive due process theory, rather than a Fourth Amendment theory, was based on a fear that a Fourth Amendment claim was barred by the statute of limitations, and that his damages under the Fourth Amendment would be limited to the very short time he spent in actual custody before being released on bond. 510 U.S. at 277-280. While Justice Ginsburg felt that a Fourth Amendment claim was not foreclosed, she noted that Albright abandoned this issue in the District Court. *Id.* at 280. Regardless of the wisdom of this strategic
(continued...)

10

not address at all the question of whether the police have any constitutional obligation to provide exculpatory evidence to the District Attorney, nor did

---

(...continued)

decision, the appropriate tabulation of the various opinions in *Albright* is as follows:

**Plurality (4):**   The Fourth Amendment pre-empts the field of pretrial deprivations of liberty. *Id*. at 274.

**Kennedy (2):**   The Fourth Amendment pre-empts the field of "arrest without probable cause" (but Albright's claim concerns not his arrest, but the malicious initiation of a prosecution). *Id*. at 281.

**Souter (1):**   The Fourth Amendment does not pre-empt the field of pretrial liberty deprivations, but since Albright's damages could just as easily be attributed to his unreasonable seizure as his baseless prosecution, this case should be evaluated under the Fourth Amendment and not due process. *Id*. at 286-87.

**Stevens (2):**   The Fourth Amendment does not pre-empt the field of pretrial liberty deprivations. *Id*. at 302-307.

Based on the narrowest reading, then, six Justices agreed that the Fourth Amendment pre-empts the field of "arrest without probable cause," but there was no majority for the proposition that the Fourth Amendment pre-empts the entire field of "pretrial liberty deprivations." Three Justices said the Fourth Amendment does not pre-empt this field, while two Justices did not address that specific issue. Thus, contrary to the *dicta* in *Osborne*, it is clear under *Albright* (or at least as clear as such a splintered opinion can ever be) that a Fourth Amendment claim for malicious prosecution can be brought under § 1983 pursuant to the plurality opinion, as can a claim based on a violation of procedural due process under the Kennedy, Souter and Stevens opinions.

11

*Albright*.

That precise issue has been addressed by the Fourth Circuit in other cases. In *Goodwin v. Metts*, 885 F.2d 157 (4th Cir. 1989), *cert. denied*, 494 U.S. 1081 (1990), the investigating detective failed to inform the prosecuting attorney that another man had confessed to the break-in for which Goodwin and his co-defendant Hallman were charged. The Court, affirming the jury verdict against the investigator under § 1983, held that "being subjected to a prosecution because an officer withheld exculpatory evidence from the prosecutor while urging that the prosecution should go forward can work a constitutional deprivation." 885 F.2d at 162. According to the *Goodwin* Court,

> In [*United States v.*] *Marion*, the Supreme Court explained the injurious consequences of a wrongful arrest; the same reasoning applies to a wrongful prosecution. Like an arrest, a prosecution is "a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Marion*, 404 U.S. [307] at 320, 92 S.Ct. [455] at 463 (1971). The injuries proved by Goodwin and Hallman are of constitutional magnitude.

*Goodwin*, 885 F. 2d at 163.

In September 1994, nine months after the Supreme Court decided

12

*Albright*, another panel of the Fourth Circuit affirmed an award of nominal damages under § 1983 against an investigator who told a witness reporting exculpatory evidence that the case against the defendant was already "wrapped up," and who never disclosed the exculpatory evidence to the prosecutor. *Carter v. Burch*, 34 F.3d 257 (4th Cir. 1994). The Court noted that the investigator's actions in not informing the prosecutor of the exculpatory evidence "technically" violated the plaintiff's constitutional rights. The Court upheld the award of nominal damages because there was evidence that the officer's actions did not cause any damage to plaintiff under the facts presented. *Id.* at 263-64.

The next case relied upon by the defendant City, *Jean v. Collins*, *supra*, 155 F.3d 701, again involved a § 1983 claim brought against individual police officers. Once again, the issue before the Court was good faith immunity, and whether a constitutional obligation on the police to provide exculpatory evidence to the prosecution was "clearly established" in 1982. Although the *en banc* Fourth Circuit held that "the right which Jean asserts was not clearly established in 1982," the Court specifically noted that:

> More recently this circuit has recognized that the failure of police officers to turn over evidence to a prosecutor may violate a criminal defendant's constitutional right to receive such evidence. . . . **[T]he**

13

> decisions in *Taylor, Carter*, and *Goodwin* now provide notice to
> police officers that they can be subject to monetary damages under
> section 1983 for failure to disclose exculpatory evidence to the
> prosecutor.[4]

*Id.* at 710n.3.

The defendant does not discuss the decision of the Fourth Circuit in

*Taylor v. Virginia*, 81 F.3d 429 (1996). *Taylor* involved the discovery of

material exculpatory evidence by the police **after** the plaintiff's arrest. Rather

than misleading the prosecutor about the existence of this evidence, the officer

did exactly what he should have — he revealed it to the prosecutor. As a

result, the prosecutor dismissed the charges prior to the preliminary hearing, at

which the issue would have been the existence of probable cause. Rather than

thanking the officer for his honesty, the plaintiff sued him under § 1983 for the

two month delay between the arrest and the dismissal.

Faced with these facts, the Fourth Circuit, not surprisingly, found no

violation of the Due Process Clause of the Fourteenth Amendment. In a

-------------------

[4] The third case relied upon by defendant, *Walker v. Sopher*, is an
unpublished opinion which also dealt with qualified immunity and whether
the obligation to provide exculpatory evidence was "clearly established" by
April 1994. It relied on *Jean*, and merely applied that holding to a time
period not covered by *Jean* (1982-1994). The opinion noted that "the law
must simply be clearer than *Goodwin* made it before public officials can be
stripped of qualified immunity." 1998 WL 682283, **5.

14

footnote, quoted by the defendant, the Court observed that under *Albright*, the failure of an officer to disclose exculpatory evidence he obtains **after** the arrest does not deprive the defendant of a liberty interest protected by the Due Process Clause. Neither *Albright* nor *Taylor* addressed the due process issue that arises when the police know of the material exculpatory evidence **before** the indictment or arrest, withhold that information from the prosecutor reviewing the case, and mislead the prosecutor about the strength of the evidence against the person to be arrested.

**B.** **Where The Due Process Or Fourth Amendment Violation Causes Plaintiff's Indictment And Impinges On His Liberty, The Police May Be Liable Under Section 1983**

Defendant City argues that it is merely **"desirable"** for law enforcement officers not to present a misleading picture to a prosecutor charged with deciding whether a citizen should face the death penalty (a classic understatement if ever there was). The cases, sensibly, hold that the police may not mislead the prosecutor.

As the Fourth Circuit recognized in *Goodwin*, "a police officer who withholds exculpatory information from the prosecutor can be liable under both § 1983 and the state common law. **The issue is causation**." 885 F.2d at 161. In the vast majority of cases, the withholding of exculpatory evidence by the

15

police at the time they present the incriminating evidence to the prosecutor will have no impact on the decision to indict. In this case, however, it did. The Assistant District Attorney who was in charge of the plaintiff's prosecution has testified both at a deposition and at Gales' civil trial that had he known of the evidence pointing towards Gales, Ed Friedland would not have been indicted. "It would have made me as a prosecutor stop dead in my tracks and reassess the entire case."[5] In those rare cases where a defendant can prove that the constitutional violation caused the prosecutor to indict when he otherwise would not have, the Due Process Clause provides a remedy under *Goodwin*.

The Fourth Circuit is not a lone voice in the wilderness on this issue. In *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), plaintiff sued the City and several police officers under 42 U.S.C. § 1983 for false arrest, false imprisonment and malicious prosecution. The facts are chilling, particularly since the person prosecuted for the murder of a 12 year old was a Chicago police officer's high school age son, who was nicknamed "Bookworm" because of his studious nature. Despite this (and the generally well established "Blue

---

[5] Within two months after he publicly testified to this at the *Gales* civil trial (his prior deposition testimony to this effect had been sealed at his request), Assistant District Attorney Richard Gordon was asked to resign after more than a decade as a state and federal prosecutor.

16

Wall"), the police withheld substantial material evidence pointing to another suspect from the prosecutors until one honest officer, who had been threatened by the others if he came forward, nevertheless told defense counsel about the exculpatory information during the trial. A mistrial was declared, and shortly thereafter the prosecutor dropped all charges.

Although the *Brady* information was in fact provided to defendant directly by a police officer during the trial, and although the charges were then dropped, the Seventh Circuit affirmed a jury award of $801,000. Judge Posner addressed the causation issue as follows:

> [I]f George Jones would have been prosecuted even if the defendants had behaved properly, then they did not cause his injury and are not liable. But **the jury could find that the defendants systematically concealed from the prosecutors, and misrepresented to them, facts highly material to — that is, facts likely to influence — the decision whether to prosecute Jones and whether (that decision having been made) to continue prosecuting him right up to and into the trial.** If the prosecutors had known of Laverty's evidence, they would almost certainly have dropped the charges against Jones before trial. Indeed, he might never have been charged in the first place if the prosecutors had known the facts militating against Jones's guilt, including the fact that Purvy's description did not fit him and that Purvy initially had failed to identify him as the assailant. **The jury was entitled to find that had it not been for the misconduct of the defendants, Jones would neither have been arrested nor charged.**

> \* \* \* \* \* \* \* \* \* \* \* \*

> **[A] prosecutor's decision to charge, a grand jury's decision to**

17

**indict, a prosecutor's decision not to drop charges but to proceed to trial – none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.**

\* \* \* \* \* \* \* \* \* \* \* \* \*

It is true that at some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the due process clause (and after conviction to the Eight Amendment's cruel and unusual punishments clause, but that is not relevant here). But the causal inquiry is unchanged. If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.

856 F.2d at 993-994.

Nor is Judge Posner and the Seventh Circuit the only court to take this view. In *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998), plaintiff alleged that two federal agents and a police officer withheld material exculpatory evidence from the United States Attorney until two months before his arson trial. Although Gallo's attorney was able to cross-examine the witnesses at his trial based on this evidence, and although Gallo was acquitted by the jury, he filed a § 1983 action and a *Bivens* action alleging, *inter alia*, that the federal agents involved had deprived him of his constitutional rights by failing to disclose the exculpatory evidence to the prosecutor until two months

18

before trial.

The federal agents filed a motion to dismiss alleging, as defendant City of Charlotte does, that their failure to turn over exculpatory material in a more timely manner was not a constitutional injury. The district court agreed and plaintiff appealed. Reversing, the Third Circuit stated that *Albright* required Gallo to show he had suffered a Fourth Amendment "seizure" in order to proceed under § 1983, but held that the restrictions imposed on Gallo's liberty while he was released on bond awaiting trial constituted such a seizure.

Addressing *Albright's* effect on the allegations necessary to sustain a §1983 suit, the Court first noted that Chief Justice Rehnquist's four-member plurality opinion

> held that "substantive due process, with its 'sparse and open-ended guideposts' [could] afford [Albright] no relief. . . ." In reaching this conclusion, Chief Justice Rehnquist first noted that Albright claimed neither that he was denied procedural due process guaranteed by the Fourteenth Amendment nor that he suffered a violation of his Fourth Amendment rights. Rather, Albright's claim was limited to the narrow issue of his **substantive** due process right to be free from a prosecution without probable cause. Upholding the district court's dismissal, Chief Justice Rehnquist announced "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"

19

*Gallo*, 161 F.3d at 221-222 (citations omitted). *See also Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

Proceeding to the "explicit textual source of constitutional protection" implicated by plaintiff's § 1983 and *Bivens* claims,[6] the Court of Appeals found that the $10,000 bond Gallo had to post, the requirements that Gallo attend all court hearings and contact Pretrial Services on a weekly basis, and the prohibition on Gallo's traveling outside New Jersey and Pennsylvania amounted to a seizure under the Fourth Amendment. 161 F.3d at 222-225. The Court concluded that the limited scope of the seizure (Gallo was never arrested, detained or even handcuffed) was germane to damages, not liability. *See also Murphy v. Lynn*, 118 F.3d 938, 944-947 (2d Cir. 1997); *Britton v. Maloney*, 981 F.Supp 25, 37-38 (D. Mass. 1997).

Similar results in cases involving § 1983 claims based on the withholding of material evidence from prosecutors have been reached by a number of other courts. In *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352 (6th Cir. 1997), the police failed to turn over information about another suspect to the

---

[6] The § 1983 and *Bivens* actions were consolidated by the district court, which construed each complaint as alleging a claim for malicious prosecution. 161 F.3d at 220.

20

prosecutor. As a result, Sutkiewicz — who was found incompetent to stand trial for murder — was committed to the state Center for Forensic Psychiatry until another prosecutor, reviewing the Sheriff's Department's files after Sutkiewicz was declared competent to stand trial, discovered the evidence and dismissed the charges. The Sixth Circuit noted that "even though an officer is not obligated to actively search for exculpatory evidence, when an officer is aware of exculpatory facts and circumstances, he has a duty to disclose those facts and circumstances to the prosecutor." 110 F.3d at 358 (citations omitted). It then granted Sutkiewicz a new trial on his § 1983 claim against the officers involved. *See also Sanders v. English*, 950 F.2d 1152, 1164 (5th Cir. 1992) (police withheld evidence from prosecutor that Sanders might be innocent, which caused Sanders to be held in pretrial detention for 50 days until grand jury returned "no true bill." Court held that summary judgment on § 1983 claim against officer was improper because a jury could conclude that had he "informed the prosecuting attorney of all of the exculpatory evidence, the charges against Sanders would have been dropped sooner than they were").

The constitutional obligation imposed on the police during the investigative phase of a case was well articulated by the district court in *Heller v. Plave*, 1993 WL 5578846 (S.D. Fla. 1993):

21

> Numerous decisions have held that where police officers or other
> government law enforcement agents procure false testimony,
> withhold exculpatory evidence, or commit other similar conduct
> during the "investigative" phase which taints and distorts the truth-
> finding process, they may be held liable in § 1983 or *Bivens*-type
> actions for violations of the accused's fundamental rights to due
> process and a fair trial.

*Id.* at 5 (citations omitted). Once again in *Jones v. City of Chicago, supra,*

Judge Posner hit the nail on the head:

> *Brady v. Maryland* does not require the police to keep written
> records of all their investigatory activities: but attempts to
> circumvent the rule of that case by **retaining records in clandestine
> files deliberately concealed from prosecutors and defense counsel
> cannot be tolerated.** The City sensibly does not attempt to defend
> such behavior in this court.

856 F.2d at 995 (emphasis added). *See also McMillian v. Johnson,* 88 F.3d

1554, 1569 (11th Cir. 1996) ("withholding *Brady* material from the

prosecutors, and thus preventing its disclosure to the defense, violates an

accused's due process right"); *Geter v. Fortenberry* (I), 849 F.2d 1550 (5th Cir.

1988) (police officer has no qualified immunity if he deliberately conceals

exculpatory evidence because such activity "violates clearly established

constitutional principles"); *Rhodes v. Smithers*, 939 F.Supp. 1256, 1275 (S.D.

W. Va. 1995) (police officer has a "particularized duty. . . to turn over all

relevant information, especially information of an exculpatory nature, to a

22

prosecutor or grand jury for an independent assessment of the probable cause evidence"); *Lewis v. McDorman,* 820 F.Supp. 1001 (W.D. Va. 1992) (valid §1983 claim stated where Detective procured prosecution by concealing material evidence from grand jury); *Lopez v. Ruhl*, 584 F.Supp. 639 (W.D. Mich. 1984) ("where an officer withholds exculpatory information from the prosecutor, court, and defendant, a § 1983 claim may lie against him").

## C. Under the Due Process Clause The Police May Not Mislead The Prosecutor

The simple proposition is this: where the police violate their constitutional duty to provide material exculpatory evidence to the prosecutor at the same time that they provide material inculpatory evidence regarding that same suspect, and thereby mislead the prosecutor, they act at their peril. In that circumstance it is reasonably foreseeable that failing to provide all the material evidence may result in an injustice. The magnitude of the ultimate injustice controls the damage issue. It does not affect the validity of the constitutional claim itself.

In this case, the failure of the Charlotte police to provide material evidence resulted in misleading the prosecutor, both directly and indirectly. Given the circumstantial nature of the evidence against Ed Friedland, and the

23

Numerous decisions have held that where police officers or other government law enforcement agents procure false testimony, withhold exculpatory evidence, or commit other similar conduct during the "investigative" phase which taints and distorts the truth-finding process, they may be held liable in § 1983 or *Bivens*-type actions for violations of the accused's fundamental rights to due process and a fair trial.

*Id*. at 5 (citations omitted).  Once again in *Jones v. City of Chicago*, *supra*,

Judge Posner hit the nail on the head:

*Brady v. Maryland* does not require the police to keep written records of all their investigatory activities: but attempts to circumvent the rule of that case by **retaining records in clandestine files deliberately concealed from prosecutors and defense counsel cannot be tolerated.**  The City sensibly does not attempt to defend such behavior in this court.

856 F.2d at 995 (emphasis added).  *See also McMillian v. Johnson,* 88 F.3d

1554, 1569 (11th Cir. 1996) ("withholding *Brady* material from the

prosecutors, and thus preventing its disclosure to the defense, violates an

accused's due process right"); *Geter v. Fortenberry* (I), 849 F.2d 1550 (5th Cir.

1988) (police officer has no qualified immunity if he deliberately conceals

exculpatory evidence because such activity "violates clearly established

constitutional principles"); *Rhodes v. Smithers*, 939 F.Supp. 1256, 1275 (S.D.

W. Va. 1995) (police officer has a "particularized duty. . . to turn over all

relevant information, especially information of an exculpatory nature, to a

22

prosecutor or grand jury for an independent assessment of the probable cause evidence"); *Lewis v. McDorman,* 820 F.Supp. 1001 (W.D. Va. 1992) (valid §1983 claim stated where Detective procured prosecution by concealing material evidence from grand jury); *Lopez v. Ruhl*, 584 F.Supp. 639 (W.D. Mich. 1984) ("where an officer withholds exculpatory information from the prosecutor, court, and defendant, a § 1983 claim may lie against him").

## C. <u>Under the Due Process Clause The Police May Not Mislead The Prosecutor</u>

The simple proposition is this: where the police violate their constitutional duty to provide material exculpatory evidence to the prosecutor at the same time that they provide material inculpatory evidence regarding that same suspect, and thereby mislead the prosecutor, they act at their peril. In that circumstance it is reasonably foreseeable that failing to provide all the material evidence may result in an injustice. The magnitude of the ultimate injustice controls the damage issue. It does not affect the validity of the constitutional claim itself.

In this case, the failure of the Charlotte police to provide material evidence resulted in misleading the prosecutor, both directly and indirectly. Given the circumstantial nature of the evidence against Ed Friedland, and the

23

acknowledged weakness of their case against him, the failure of the police to provide the District Attorney's office with the evidence pointing to Gales created the false impression that Ed Friedland was the only person who could have committed this crime. The police knew that a circumstantial evidence case, as opposed to a direct evidence case, is a zero sum game. The more circumstances point to an alternative suspect, the less they point to their favored suspect. By presenting only the circumstantial evidence allegedly implicating Friedland, the police mislead the District Attorney about the strength of the case against him. This the Constitution does not allow.

Nor was the misleading of the District Attorney in this case only indirect. Every Assistant District Attorney who had any responsibility in this case asked the police the same, obvious question: Are there any other suspects? They recognized, as did the police, the zero sum nature of a circumstantial case. Time and again, these Assistant District Attorneys were told the same thing: there were a couple of yard workers that were looked at early on, but there was no evidence they were involved. Given the evidence regarding Gales that the police knew they had, this was an outright falsehood. This the Constitution does not allow.

24

**D. The Due Process Obligation Of The Police Not To Mislead The Prosecutor May Be Violated Even When There Is No Conviction**

Defendant seems to argue that the due process obligation of the police not to mislead the prosecutor and to provide material exculpatory evidence to the prosecutor can only be violated when the accused is subjected to an unconstitutional trial and is unfairly convicted. Otherwise, defendant seems to say, "no harm, no foul."

While it is clearly true that a citizen's constitutional right to due process is violated where the police withhold material exculpatory evidence throughout trial and a conviction results, this is not the only situation in which there is a remedy under § 1983 for such a violation.[7] The decisions in *Goodwin*, *Jones*, *Gallo, Sutkiewicz* and *Sanders*, among others, amply demonstrate that fact. Nor is there any valid reason for requiring that a citizen be convicted before she can sue the police for violating her constitutional rights. What sense does it make not to allow the innocent citizen who is subjected to a trial and acquitted the same civil remedy against the police as one who is convicted? While her

---

[7] As discussed earlier, *Albright* did **not** involve either a Fourth Amendment claim or a due process claim under *Brady* relating to the withholding of exculpatory evidence. Rather, it involved an inchoate "substantive due process" claim based upon a malicious prosecution.

25

damage may be less, it is still real, as the Supreme Court itself recognized in *Marion*.

**E.    *United States v. Williams* Does Not Allow The Police To Mislead The Prosecutor**

Defendant claims that the Supreme Court's decision in *United States v. Williams*, 504 U.S. 36 (1992), trumps all of these cases because it "implicitly confirm[ed] that probable cause may be determined based solely on incriminating evidence." Defendant's Memorandum (8/25/99), at 5. Defendant states that the Court in *Williams* "held that a prosecutor has no obligation to present exculpatory evidence to the grand jury." *Id.* In fact, what the Court held in *Williams* was that federal courts "have no authority to prescribe such a duty pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. *Williams* was a "supervisory power" opinion, pure and simple. Nowhere did the Court even hint, much less hold, that the Constitution permits police officers to mislead prosecutors into bringing charges they would not otherwise bring.[8]

---

[8] In addition, as is discussed in depth in the next section, *Williams* has nothing to do with a citizen's Fourth Amendment rights. *See Lewis v. McDorman*, 820 F.Supp 1001, 1006-1007 (W.D. Va. 1992), allowing a § 1983 suit based on the Fourth Amendment where the failure of the defendant police officer to disclose exculpatory evidence to the grand jury

(continued...)

26

F.  **Misleading The Prosecutors About The Strength Of The Case Against
    Plaintiff Affected The Conditions Of Release That Were Imposed By The
    Court After His Indictment And Thereby Deprived Plaintiff Of A Protected
    Liberty Interest Without Due Process Of Law**

Finally, it should be noted that under North Carolina law, the judge

determining the conditions of release after an indictment and arrest is **required**

to take into account "the weight of the evidence against the defendant." N.C.

GEN. STAT. § 15A-534(c).  The Charlotte police therefore knew, or reasonably

should have known, that their failure to disclose to the prosecutor the material

evidence pointing to Marion Gales they had in their files created a "reasonable

probability" that, had the evidence been disclosed, the result of the bond

proceeding would have been different.  *See United States v. Bagley,* 473 U.S.

667, 682 (1985).  In fact, the testimony of Assistant District Attorney Richard

Gordon, who represented the state at that hearing, makes clear that the

outcome of the bond proceeding **would** have been different.  If the Gales

information would have caused him to stop dead in his tracks and reassess the

---

(...continued)
resulted in plaintiff's being jailed for three days until the indictment was
dismissed by the prosecutor and where the plaintiff alleged that the officer
withheld the exculpatory evidence from the grand jury to make sure he was
indicted and arrested.  Plaintiff makes the same allegation here with regard
to the withholding of material evidence from the prosecutor.

27

entire case, it is reasonable to conclude that he either would have dismissed the indictment without prejudice (as he did eight months later) in order to conduct the reassessment, or at a minimum would have agreed to plaintiff's release without any of the conditions actually imposed while he conducted this reassessment.

The conditions of release imposed by the court on plaintiff after the arrest included the posting of a $250,000 cash bail, restrictions on travel, required attendance at all court hearings, and regular reporting to Pretrial Services. In fact, plaintiff had to seek the court's permission to attend a medical seminar out of state. These conditions of release significantly impinged upon plaintiff's liberty while he was awaiting trial.

Of course, the "reasonable probability of a different result" test for determining the effect of a *Brady* violation is generally applied in the setting of a conviction after trial. But the rights protected by *Brady* are not so narrow. As the Supreme Court noted in *Bagley*, "the *Brady* rule is based on the requirement of due process. Its purpose is . . . **to insure that a miscarriage of justice does not occur.**" 473 U.S. at 675. After all, the role of the prosecutor, and of the police, is not just to win a particular case, but to see that justice is done. *See Berger v. United States*, 295 U.S. 78, 88 (1935).

28

The Due Process Clause of the Fourteenth Amendment serves that important goal. It required that the Charlotte police not mislead the Mecklenburg County District Attorney by withholding evidence pointing to the guilt of Marion Gales, by falsely answering direct questions from the prosecutors about the evidence relating to other suspects, and by generally creating the mis-impression that all of the circumstantial evidence in this entirely circumstantial case pointed only to Edward Friedland when they **knew** better.

No possible harm to the enforcement of the law or to the proper functioning of the criminal justice system can come from requiring the police to provide all material information, the exculpatory as well as the inculpatory, to the District Attorney when the case is presented for a prosecutorial decision.[9]

---

[9] The fact that the disclosure of exculpatory evidence to the prosecutor, and then to defense counsel, prior to the end of trial may prevent a finding of reversible error in a criminal trial has no bearing on the civil § 1983 analysis. For example, if the plaintiffs in *Jones* and *Gallo* had been convicted, the fact that their respective trial counsel received the exculpatory evidence at issue before the end of their criminal trials would have precluded a reversal on *Brady* grounds. Nevertheless, the Sixth and Seventh Circuits held that *Jones* and *Gallo* both had valid § 1983 claims against the police based on the delay in providing that information to the prosecutors. In a criminal case, when the jury convicts after hearing the exculpatory evidence, then it is clear that earlier disclosure would not have resulted in dismissal of the charges, as the prosecutor in fact chose to go

(continued...)

29

Only then can the District Attorney perform his statutory function. A simple rule: Don't mislead the prosecutor. Easy for the police to remember and important for the courts to enforce.

IV

## PLAINTIFF IS ENTITLED TO PURSUE A § 1983 CLAIM
## BASED UPON THE VIOLATION OF HIS FOURTH AMENDMENT RIGHTS

### A.    Section 1983 Provides Relief For An Arrest Without Probable Cause

In addition to abundant factual detail, plaintiff's complaint includes a claim for relief specifically grounded upon violation of his Fourth Amendment right not to be seized absent probable cause. Indeed, paragraph 83 alleges that "[p]laintiff was arrested, seized, detained and prosecuted without probable cause in violation of his rights under the Fourth Amendment to the United States Constitution." At this stage of the litigation this allegation must be treated as true. The only question is whether a blatant Fourth Amendment violation, if proved, finds no redress under § 1983. The case law makes clear

_____

(...continued)
through with the prosecution and the jury found guilt beyond a reasonable doubt. When charges are dismissed upon the disclosure of exculpatory evidence to the prosecutor of exculpatory evidence, it is reasonable to believe that the charges would not have been brought had the prosecutor known the evidence when making the charging decision.

30

that the answer is no; violations of the Fourth Amendment are cognizable under

§ 1983.

This suit is brought against the municipality, not the individual officers, and hence there is no question of qualified immunity. The issue is not whether plaintiff's Fourth Amendment right to be free from unreasonable seizure was clearly established, but whether it existed at all. *Owen v. City of Independence,* 445 U.S. 622 (1980) (municipality sued under § 1983 may not assert defense of qualified immunity based upon good faith of municipal officials). Cases, both before and after the Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266 (1994), make clear that seizure without probable cause is an actionable violation of the Fourth Amendment under § 1983. *See Jones v. Chicago,* 856 F.2d 985 (7th Cir. 1988) (defendants concede that arrest without probable cause can give rise to liability); *Whiting v. Traylor,* 85 F.3d 581 (11th Cir. 1996) ("malicious prosecution" claim based, upon violation of the Fourth Amendment, viable after *Albright*); *Gallo v. City of Philadelphia,* 161 F.3d 217 (3rd Cir. 1998) (a defendant who, although acquitted, had been subject to pre-trial restrictions can bring Fourth Amendment claim after *Albright*). In short, there should be no serious question that a violation of Fourth Amendment rights can be remedied through a suit under § 1983.

31

**B.** **Probable Cause Is Determined By Examining All Of The Available Evidence**

Defendant here does not really contest that § 1983 provides a remedy for a Fourth Amendment violation. Rather, defendant argues that probable cause can be evaluated in light of only the inculpatory evidence the police chose to present to the prosecutor.[10] Common sense suggests that probable cause under the Fourth Amendment cannot be determined solely by looking at the evidence the police believe support probable cause. Indeed, under such a scenario a circumstantial case against Dr. Friedland that passed the probable cause test in a vacuum would still amount to probable cause regardless of the evidence against another suspect; a case that was sufficient in a vacuum would still pass muster even if Gales had been seen killing Kim Thomas by a busload of nuns, and had then confessed and lead the police to the murder weapon. To even state defendant's contention is to reveal its flaw.

In addition to the fact that defendant ignores the clear allegation that there was no probable cause, defendant's argument that probable cause is to

_____

[10] Plaintiff, of course, has never conceded that there was probable cause to indict even when the evidence against Gales is ignored, so defendant's theory is not a basis for dismissal of this complaint in any event. Indeed, it was the District Attorney's opinion that, absent the flawed and unreliable evidence of time of death, the evidence against plaintiff was no more than mere speculation. This opinion was reached without regard to the evidence against Gales.

32

be judged by looking at only that evidence which the police chose to disclose is baseless. Defendant's argument rests entirely upon *United States v. Williams,* 504 U.S. 36 (1992), a decision that holds that a federal court may not require under its supervisory power that prosecutors present substantial exculpatory evidence to the grand jury. *Williams* is not a Fourth Amendment decision; instead, it rejects a non-constitutional requirement imposed by a federal court.[11] Defendant would have this Court transplant the Supreme Court's rejection of the exercise of its supervisory power over the grand jury into the Fourth Amendment context without any analysis of the differences between the functioning of the grand jury and the Fourth Amendment restrictions on a finding of probable cause.

It is well established that an indictment, valid on its face, cannot be challenged based upon the lack of evidence to support the charge. *See*

---

[11] As noted by the Court, Williams did "not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury." 504 U.S. at 45. Williams instead relied upon the supervisory power of the federal courts, and "a sort of Fifth Amendment common law." 504 U.S. at 51. *Williams,* then, did not even involve a claim that failure to present exculpatory evidence violated a specific constitutional provision. In addition, the indictment in *Williams* had initially been dismissed because the excluded evidence would raise a "reasonable doubt," a standard not embodied in a probable cause determination.

33

*Williams,* 504 U.S. at 54; *Bank of Nova Scotia v. United States,* 487 U.S. 250, 261 (1988); *Costello v. United States,* 350 U.S. 359, 363-364 (1956). A search or arrest warrant, however, may be challenged based upon the lack of evidence to support the finding of probable cause. *See Illinois v. Gates,* 462 U.S. 213, 239 (1983) (reviewing courts will not defer to a warrant based upon an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause"). Indeed, even in *Leon v. United States*, 468 U.S. 897 (1984), in which the Court crafted a good faith exception to the exclusionary rule for searches conducted pursuant to a warrant, the Court observed that "[d]eference to the magistrate, however, is not boundless." 468 U.S. at 914. *Leon* still allows a court to reassess a finding of probable cause in the Fourth Amendment context. In contrast, deference to a grand jury's assessment of the evidence is boundless.

The difference between the standards may be explained by the fact that an indictment, if unaccompanied by any form of pre-trial detention, causes no immediate deprivation of the defendant's liberty. If the allegation is groundless, the defendant will be acquitted at a trial in which the exculpatory evidence will be disclosed. In contrast, an arrest — whether based upon an indictment, arrest warrant or neither — involves an immediate deprivation of a Fourth

34

Amendment right that will not be undone by a subsequent acquittal.

## C. The Supreme Court's Decision in *Franks* Prohibits Material Omissions That Undermine Probable Cause

Defendant appears to argue for a rule that police may omit any evidence that undermines probable cause in convincing a prosecutor, grand jury, or magistrate that a citizen should be arrested and detained. That the "rule"[12] spelled out in *Williams* does not apply to a determination of whether a seizure is permissible under the Fourth Amendment is clear from *Franks v. Delaware,* 438 U.S. 154 (1978), and its progeny. *Franks,* of course, allows a person aggrieved by the issuance of a facially valid search warrant to challenge the warrant on the ground that it contains material false statements, made with knowledge or reckless indifference. Significantly *Franks* applies to omissions as well as false statements. *See, e.g., United States v. Knapp,* 1 F.3d 1026, 1029 (10th Cir.1993); *United States v. Frost,* 999 F.2d 737, 743 (3d Cir.), *cert. denied*, 510 U.S. 1001 (1993), *United States v. Higgins,* 995 F.2d 1, 4 (1st Cir.1993); *United States v. Bianco,* 998 F.2d 1112 (2d Cir. 1993); *United*

_____

[12] It is by no means clear that the Court in *Williams* would have tolerated an intentional effort to mislead the grand jury, as opposed to the apparently good faith decision to only present that evidence which supported the charge. For example, it is hard to believe that a prosecutor acts appropriately in presenting false testimony to a grand jury.

*States v. Martin,* 615 F.2d 318, 328 (5th Cir. 1980). Although the Fourth Circuit takes a strict approach to *Franks* claims, it recognizes that "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead the magistrate." *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995). *Poe* was decided three years after *Williams*, and as with all of the other cases in this area makes no mention of *Williams* having any impact on a Fourth Amendment claim. In short, when inclusion of the omitted material undermines the showing of probable cause, the arrest warrant is subject to attack. In direct contrast to the supervisory rule rejected in *Williams*, then, Fourth Amendment jurisprudence requires that the police make a complete and non-misleading presentation to the person who is determining whether the defendant will be subject to seizure.[13] If the omission

_____

[13] Although this Court need not address this issue at this time, whether an officer who obtains an arrest warrant through false statements or intentional or reckless omissions can avoid civil liability by being allowed to show that there was probable cause even without the omissions and falsehoods, and thereby raise a qualified immunity defense, is open to question. In *Bagby v. Brondhaver,* 98 F.3d 1096, 1099 n.2 (8th Cir. 1996), the Court observed that "[a] more stringent rule may be appropriate when the liar seeks the benefit of this defense," but ultimately took no position on that issue. *See also Sherwood v. Mulvihill*, 113 F.3d 396, 402-04 (3d Cir. 1997) (Sloviter, C.J., dissenting) ("[T]here are obvious policy reasons why a court may be reluctant to suppress the fruits of a search, notwithstanding erroneous information in an affidavit, if the objective circumstances would

(continued...)

36

of evidence that contradicts or undermines the police theory of guilt makes their presentation misleading, then *Franks* and the cases that follow make clear that the Fourth Amendment has been violated. *Williams,* which does not deal with whether there was sufficient justification for a pre-trial seizure, simply does not overrule *Franks.*

That evidence inconsistent with guilt must be considered in assessing whether probable cause exists is also clear from the Fourth Circuit's decisions in *Sevigny v. Dicksey,* 846 F.2d 953 (4th Cir. 1988), and *Clipper v. Takoma Park,* 876 F.2d 17 (4th Cir. 1989), both of which recognized that a jury should take into account an officer's failure to follow up on readily available exculpatory evidence in assessing whether there was probable cause for an arrest. Both *Sevigny* and *Clipper* underscore the fact that a Fourth Amendment probable cause determination is not to be made with blinders on.

---

(...continued)
have supported a finding of probable cause. It is much more difficult to find a policy argument that would justify shielding police officers who knowingly lied in the warrant affidavit from a civil suit seeking damages for redress of a constitutional injury."). In this case, in which a qualified immunity defense is not even available, there is even less reason to allow the defendant to argue that its omissions and falsehoods were objectively harmless.

37

**D.   A Misleading Presentation On Probable Cause Also Violates A Citizen's Right To A Fair Hearing On The Existence Of Probable Cause**

Finally, in analyzing the scope of plaintiff's Fourth Amendment rights, it is important to keep in mind that the Fourth Amendment has a procedural component.  The Fourth Amendment guarantees citizens the right to a timely and fair determination by a neutral magistrate or judge as to whether probable cause existed.  *See Gerstein v. Pugh*, 420 U.S. 103 (1975).  A denial of this right to a fair hearing on the probable cause issue is as much a violation of the Fourth Amendment as a seizure without probable cause.  *Franks* is part of that fair hearing, and the requirement that a magistrate or other authority make the probable cause determination requires that all of the relevant evidence be presented, and not simply that evidence the police chose to bolster their claim that probable cause exists.

Just as misleading a jury in an otherwise "fair" trial violates the constitution, misleading the persons responsible for determining whether a citizen should be arrested violates the right to a fair determination of probable cause.

38

V

**PLAINTIFF HAS ADEQUATELY ALLEGED A
VIOLATION OF HIS STATE-CREATED RIGHT TO HAVE
A FULLY INFORMED PROSECUTOR MAKE THE CHARGING DECISION**

North Carolina is not constitutionally required to have a prosecutor screen cases prior to indictment, or to have felony cases brought only after a grand jury has returned a true bill. However, North Carolina is required to ensure that a defendant subject to pre-trial deprivation of liberty is afforded a probable cause determination by a neutral and detached magistrate. A state can satisfy that requirement in any number of ways. North Carolina has chosen to require that all felony charges be submitted to a grand jury for indictment, and has chosen to require the prosecutor to perform the function of determining which cases go before the grand jury and what evidence is presented. N. C. GEN. STAT. §15A-626. Unless a prosecutor decides to present a felony charge to a grand jury, and the grand jury chooses to indict, a citizen in North Carolina cannot be required to stand trial on a felony charge. N. C GEN. STAT. § 15A-642. This is true even when a magistrate has issued an arrest warrant, and even when a district court has found probable cause during an adversary

39

hearing.[14]  N. C. Gen Stat. §15A-627.

In this case, the defendants procured an indictment by convincing the district attorney that there was a prosecutable case against plaintiff.  This was accomplished by presenting a distorted picture of the evidence against plaintiff, and by falsely assuring the prosecutors that there was no other viable suspect. Had the police revealed that there was another viable suspect, and the weakness of some aspects of their case against plaintiff, there would have been no indictment.  Indeed, Assistant District Attorney Richard Gordon has already expressed this opinion.

By misleading the prosecutor, who in turn made the decision to present

---

[14] Under North Carolina law a defendant arrested prior to indictment has a right to a probable cause hearing in district court.  If the district court, after an adversary hearing, finds probable cause, the district attorney must still obtain an indictment from a grand jury.  If an indictment is obtained prior to the probable cause hearing,  the case is bound over to superior court and no probable cause hearing is held.  If an indictment is obtained prior to the arrest, the magistrate simply issue the an order for arrest based upon the indictment without any further determination of probable cause.  N. C. GEN. STAT. §15A-305.  In essence, by convincing the prosecutor to get an indictment first, the police ensured that the only probable cause determination would be that of the grand jury.  In this situation, the grand jury – after hearing only the evidence chosen by the prosecutor – performs the function of determining that there is a basis for an arrest.  When the prosecutor is misled, then so too is the grand jury, and a defendant's Fourth Amendment right to a fair determination of probable cause will be effectively negated.

the case to the grand jury, the police both avoided revelation of the weaknesses of their case that would have occurred during a presentation in a probable cause hearing, and were able to use the indictment to get an arrest warrant with no further showing before the magistrate. In short, the police under-cut plaintiff's Fourth Amendment right to a meaningful hearing on the existence of probable cause to support his arrest, and effectively denied him the state-created right to have a prosecutor make an informed decision as to whether to proceed with a felony prosecution, and effectively misled the grand jurors, who would only hear what the deceived prosecutor presented.

By deceiving the prosecutor, who was required to screen cases for presentation to the grand jury, defendants not only denied plaintiff his Fourth Amendment right to a fair determination of probable cause, but also denied him his state-created right to a screening. While North Carolina is not required to have a prosecutor screen cases prior to indictment, or to have a grand jury stand between a citizen and a felony charge, once the state grants these protections to its citizens the police may not arbitrarily take them away, without violating due process. *See Goss v. Lopez*, 419 U.S. 565 (1975) (state, having granted right to education, could not arbitrarily take that right away); *Morrisey v. Brewer*, 408 U.S. 471 (1972) (cannot revoke parole arbitrarily); *Connell v.*

41

*Higginbotham*, 403 U.S. 207 (1971) (continued employment); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (welfare).

Although due process normally involves a determination of whether there is sufficient procedural protection before the government takes away a state - created right, the Constitution is equally offended when state actors effectively deny citizens their rights by making the right a sham. This was made clear in *Mooney v. Holohan*, 294 U.S. 103 (1935), in which the Court held that a defendant's right to a trial was rendered meaningless by the knowing presentation of perjured testimony. The Court observed that the requirement that a citizen be afforded a trial "cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured." 294 U.S. at 112. *See also Palko v. Connecticut*, 302 U.S. 319, 327 (1937) ("The hearing, moreover, must be a real one, not a farce or a pretense.").

In this case the police contrived to deny plaintiff any adversary probable cause hearing, and, through the presentation of misleading and incomplete evidence, to render his right to have probable cause assessed by the

42

prosecutor, grand jury and magistrate who issued the arrest warrant a meaningless sham. In so doing, the police effectively arbitrarily deprived plaintiff of his state-created rights, and thereby violated due process.

VI

### ALLOWING THE POLICE TO DECEIVE A PROSECUTOR INTO BRINGING A CAPITAL MURDER CHARGE "SHOCKS THE CONSCIENCE"

Defendant argues that there is no specific provision of the Constitution that protects a citizen from being indicted on a capital murder charge that is obtained through police deception of a district attorney. Plaintiff believes that this is simply not true, based upon the authorities discussed herein. However, even if this Court were to accept the notion that there is no specific constitutional impediment to police deception of a district attorney, to allow such conduct would "shock the conscience" and interfere with rights "implicit in the concept of ordered liberty," and thereby run afoul of the Due Process Clause.

If the Court finds that no specific constitutional provision provides protection against Defendant's effort to secure an indictment in this case, then it is clear that the more generalized notion of substantive due process provides a remedy. The Fourteenth Amendment's Due Process Clause comprehends not simply facially valid procedures, but processes that are fundamentally fair in

43

practice. It shields citizens from the State "abusing [its] power, or employing it as an instrument of oppression," *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992), even when probable cause justifies some government intervention. *See, e.g., Rochin v. California*, 342 U.S. 165 (1952) (forced stomach-pumping was unconstitutional, despite probable cause to believe suspect swallowed narcotics). Thus, regardless of the probable cause determination, substantive due process is properly invoked when the government abuse is not otherwise "covered by" a specific constitutional provision, *County of Sacramento v. Lewis*, 523 U.S. 833, (1998), and is of such a chilling nature that it "shocks the conscience" and interferes with rights "implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987), quoting *Rochin, supra*, 342 U.S. at 172, and *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937).

As set forth in the preceding sections, Plaintiff believes that Defendant's actions in securing the charge against him violate specific constitutional rights. However, even if no specific constitutional right proscribes police deception of a district attorney in a capital case, it can safely be said that Defendant's bad faith effort to deprive Plaintiff of "life, [and] liberty" is both conscience-shocking and contrary to the American concept of ordered liberty. As of 1994,

44

Defendant had ignored seven years of state court admonitions regarding the illegal suppression of evidence. Undeterred, Defendant refused to institute reforms to assure the preservation and documentation of exculpatory evidence. Inevitably, Dr. Friedland's case became yet another capital murder prosecution infected by Defendant's underhanded and unconstitutional tactics. Even the district attorneys involved in this tragic prosecution admit that, but for Defendant's suppression and misrepresentation of material evidence, they would not have indicted.

The egregious police misconduct in this case is patently intentional. Yet Plaintiff need only prove Defendant's "deliberate indifference" to his rights in order to earn substantive due process relief. *County of Sacramento*, 523 U.S. at ___, 140 L. Ed 2d 1045, 1060. Absent a strong showing of intent, the Court has been loathe to afford a substantive due process remedy for improper police actions made "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). However, the intent threshold is much lower – "deliberate indifference" – when the abuses occur following "the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *County of Sacramento*, 523 U.S. at ___,

45

140 L. Ed 2d at 1062. Here Defendant cannot blame its sins on a lack of contemplation: the investigators deliberately withheld exculpatory evidence from prosecutors for **four years**. "When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Id.* Over four years of *intentionally* trampling Plaintiff's rights even the more offensive to due process.

VII

**THIS COURT SHOULD DECLINE DEFENDANT'S
INVITATION TO ABSTAIN**

Defendant seeks to have this Court abstain "pending resolution of plaintiff's state court claims against the City." Defendant's Memorandum (8/25/99), at 17. This request appears to be based solely upon the claim that the litigation in state court is duplicative of that before this Court. The timing of this request is odd; the parties have been engaged in discovery and extensive depositions for many months, and are finally reaching the point where there is an end in sight to the discovery that needs to be done. This discovery largely serves the purposes of both suits, and there has been little need to engage in repetitive discovery due to the pendency of two suits. Indeed, the defendant has not previously sought a stay based upon any claim that the pendency of

46

two suits was causing any inefficiency in the litigation. Only after discovery revealed a basis for seeking injunctive and equitable relief, and plaintiff sought an immediate hearing on this issue, did the City seek to avoid the federal forum. The request for a stay, then, does not appear to be designed to avoid any inefficiency, but rather to avoid having this Court consider the requests for equitable and declaratory relief sought by plaintiff.

As the decisions of the United States Supreme Court make clear, abstention of any sort is rarely appropriate. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-89 (1959). When the state court is considering issues of damages, as opposed to equitable relief, at most a delay in the federal proceedings is appropriate. *Quakenbush v. Allstate Insurance Co.,* 517 U.S. 706 (1996).

In this case there is no reason to abstain. Defendant — which has repeatedly ignored the warnings of state court judges over the failure properly

47

to provide evidence to the District Attorney - seeks to have its conduct evaluated only in the same state court. By requesting abstention, Defendant apparently seeks to have this Court defer ruling on plaintiff's requests for equitable relief as well. These requests, however, involve the defendant's current practice of not training officers to record *Brady* material. Plaintiff should not be denied the opportunity to have this federal Court take action to correct the ongoing constitutional violations. Resolution of the state court damages action, which resolves only whether the **past** arrest of plaintiff constituted malicious prosecution under North Carolina law, will not even address the **ongoing** violations of the United States Constitution. In addition, the damage claims in this case involve violations of the United States Constitution, claims that this Court is best suited to hear.

Reduced to its essence, defendant's request for abstention is premised on the belief that the state court system will resolve the case prior to this Court taking any action. In fact, abstention will effectively deny plaintiff a meaningful opportunity to obtain injunctive and declaratory relief from redress ongoing constitutional violations. In addition, there is no inefficiency in allowing the parties to proceed to prepare for trial on the federal damage action. Defendant's request assumes that the state trial will take place before this Court can issue

48

any rulings, and that a verdict in the state court will end the case. These assumptions are unwarranted. Plaintiff intends to file a motion for summary judgment in this Court prior to the trial in state court. In addition, a verdict in the state court on the state tort claim may not be *res judicata* in federal court.[15] The question whether a state verdict has any impact on the federal claim should not be answered prior to that event taking place. Should there in fact be a verdict in the state court prior to a decision in this court, the parties can then address the extent to which that verdict resolves any issues in this case. In the meantime, defendant should not be allowed to delay plaintiff's right to federal relief, and the request for abstention should be denied.

## CONCLUSION

Plaintiff has adequately alleged that he was charged and arrested for the capital murder of his wife despite the absence of probable cause, and that this was accomplished through defendant's policy of withholding exculpatory evidence from the prosecutors who are obligated to screen cases prior to

---

[20] A verdict in favor of plaintiff will presumably result in defendant refusing to pay any damages beyond those covered by insurance, as under North Carolina law defendant is immune from any damages beyond that amount. In this situation plaintiff will need to litigate his federal claim against the City to obtain full compensation, and there will be no inefficiency in allowing both cases to go forward. Indeed, abstention will only delay plaintiff's ability to obtain full compensation.

49

presentation to the grand jury. Defendant argues strenuously that this is a constitutionally acceptable policy, and that a citizen charged in such a fashion has no basis for complaint. Fortunately, the law is more protective of a citizen's right not to be accused of murder, arrested and placed in jail on a charge that would not have been brought by a fully informed prosecutor. Defendant's motion for judgment on the pleadings should be denied.

RESPECTFULLY SUBMITTED this the 28th day of September, 1999.

RUDOLF MAHER WIDENHOUSE & FIALKO

David S. Rudolf; NCSB 8587
Thomas K. Maher; NCSB 12771
Andrew G. Schopler; NCSB 24503
Attorneys for Plaintiff
312 West Franklin Street
Chapel Hill, NC 27516
Telephone: (919) 967-4900

50

<u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE TO ABSTAIN** was duly served upon the following by depositing same in a post paid, properly addressed envelope in a Post Office or an official depository under the exclusive care and custody of the United States Postal Service.

This the 28th day of September, 1999.

**RUDOLF MAHER WIDENHOUSE & FIALKO**

David S. Rudolf; NCSB 8587
Thomas K. Maher; NCSB 12771
Andrew G. Schopler; NCSB 24503
Attorneys for Plaintiff
312 West Franklin Street
Chapel Hill, NC 27516
Telephone: (919) 967-4900

Served on:

Mr. Jim D. Cooley
Mr. G. Michael Barnhill
Womble Carlyle Sandridge and Rice, P.L.L.C.
3300 One First Union Center
301 South College Street
Charlotte, NC 28202-6025
Attorneys for City of Charlotte

51