IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:98cv122-Mu

EDWARD L. FRIEDLAND,

Plaintiff,

Vs.

CITY OF CHARLOTTE, a North
Carolina Municipal Corporation,

Defendant.

MEMORANDUM AND
RECOMMENDATION

**THIS MATTER** is before the court upon defendant's renewed Motion for Judgment on the Pleadings and plaintiff's Motion to Amend or Supplement Complaint. Having carefully considered those motions, reviewed the pleadings, and conducted a hearing, the undersigned enters the following findings, conclusions, and recommendation.

**FINDINGS AND CONCLUSIONS**

**I. Background**

**A. Construing Plaintiff's Federal Claim**

This matter is brought under the provisions of 42, United States Code, Section 1983, wherein plaintiff's only remaining claim is that his fourteenth-amendment right to due process may be violated in a future or ongoing prosecution for murder if this court does not mandate that certain procedural safeguards be instituted by the Police Department of the City of Charlotte.[1]

---

[1] Plaintiff has dismissed his fourth-amendment claim based on the final decision of the North Carolina General Court of Justice in a parallel action, in which that court determined that the previous prosecution was at all relevant times supported by probable cause. Based on plaintiff's response to defendant's motion, it appears that he has abandoned his claim that his fourteenth-amendment rights were violated in the previous prosecution in favor of an argument that his right to a fair trial in the future may be imperiled through ongoing or future police work that does not satisfy due process.

## B. The Criminal Prosecution of Plaintiff in State Court

Late in the evening of July 27, 1990, the Charlotte Police Department discovered the body of plaintiff's wife, Kim Thomas, in her home. Plaintiff had purportedly discovered her body after arriving home late from work. Plaintiff supposedly stated to investigating officers that when he saw his wife's body from across the room, he called 911 and told them she was dead, but did not go to her to check for vital signs. Plaintiff is a medical doctor.

The police investigation uncovered that Ms. Thomas had been attacked in her bedroom, handcuffed, moved to her dining room, and killed. Her throat had been slashed and cut 22 to 26 times; some of the cuts went to the level of her spinal column.

The investigation further revealed that nothing had been stolen from her home or person (she was wearing diamond jewelry when found), there were no signs of forced entry, and her baby, Elliot, was unharmed in his crib. In addition, there was no evidence of a sexual assault. Investigators concluded that she had been killed in the early to mid-morning hours of July 27, 1990, and had lain in her house throughout the day. Police investigators described plaintiff as calm, unemotional, and able to describe in remarkable detail his whereabouts for that day after leaving his home for work. Plaintiff purportedly told police that he could tell his wife was dead from a distance of 20 feet in the dark. Rescue personnel, however, had to use flashlights to see anything more than Ms. Thomas's silhouette.

From the outset, plaintiff was the prime suspect, inasmuch as the investigation revealed that he was the only one with Ms. Thomas and her baby in the early morning of July 27, 1990, and that he did not leave their home until approximately 7:45 a.m. The investigation further revealed that Ms. Thomas likely was dead not later than 8:30 a.m., based on the fact that, uncharacteristically, calls from friends went unanswered. Additional circumstantial evidence (not all of which will be recited here) led authorities to believe that plaintiff was the culprit, including

the organization of the crime scene, "overkill," the obvious familiarity the killer had with the home, and the lack of theft as a motive. Finally, in 1993, a forensic pathologist opined that Ms. Thomas was likely dead before the time plaintiff stated he left the home that morning. That report was excluded from evidence by the state trial court, and its exclusion, defendant states, caused the prosecutor to dismiss the case prior to trial.

Contrary to defendant's position, plaintiff contends that it was the late discovery of <u>Brady</u> material that caused the prosecution to be dropped. It is undisputed that the defendant's police department failed to turn over to the prosecutor, prior to either indictment or trial, a file that contained information concerning another suspect, Marion Gales.

Marion Gales was a suspect throughout the first several weeks of the investigation.[2] The investigation of Mr. Gales started out to be promising and included an allegation from Robert Roseboro, his brother-in-law, that he had seen Mr. Gales with blood on his clothing; other information placing Mr. Gales in the neighborhood on the morning of the crime; and additional information that Mr. Gales had worked in Ms. Thomas's yard. Confidence in that information deteriorated as time passed and the following occurred: Mr. Roseboro withdrew his allegations; it was discovered that there were personal issues between Mr. Gales and Mr. Roseboro; and it was determined that there was an irreconcilable conflict between Mr. Gales's *modus operandi*, which was burglary to support a crack habit, and the findings at the crime scene indicating planning, deliberation, personal animus towards Ms. Thomas, and a lack of sexual or financial motivation--all of which investigators found to be counter-indicative of Mr. Gales.

---

[2] It is undisputed that the state district attorney has now reviewed the evidence against Mr. Gales and determined that there is not probable cause to proceed against him in this matter.

### C. Plaintiff's State Civil Action

In his state-court complaint filed June 2, 1997, plaintiff sued the City of Charlotte and four of its police officers for malicious prosecution, infliction of emotional distress, and violation of the state constitution. Although plaintiff could have brought these Section 1983 claims in state court under the doctrine of concurrent jurisdiction, he chose, instead, to proceed in both courts. In the state action, plaintiff alleged that police failed to investigate Ms. Thomas's murder properly and failed to provide the exculpatory evidence, discussed *supra*, to the district attorney prior to indictment. It was plaintiff's contention that those failures caused the district attorney to obtain a grand jury indictment of him without probable cause and in violation of his state due-process rights. The state court determined that probable cause existed to support the aborted prosecution and granted summary judgment on plaintiff's claim of malicious prosecution. The court further held that plaintiff's claims under the North Carolina Constitution, including North Carolina's version of the Due Process Clause, failed to state a cause of action and granted the City's motion for summary judgment on those claims as well. This court gives full faith and credit, as well as *res judicata* effect, to the final decision of that court.

## II. Standard Applicable to Motions for Judgment on the Pleadings

A motion for judgment on the pleadings is appropriate where ultimate facts are not in dispute. A. S. Abell Co. v. Baltimore Typographical Union Co., 338 F.2d 190, 193 (4th Cir. 1964). Under Rule 12(c), Federal Rules of Civil Procedure, judgment on the pleadings should be entered where it is apparent that there are no issues of material fact and that only questions of law exist. Moreno v. University of Maryland, 420 F. Supp. 541 (D.Md. 1970), aff'd, 556 F.2d 573 (4th Cir. 1977). When there are no factual issues, judgment on the pleadings should be granted

4

where the moving party clearly is entitled to the judgment it seeks as a matter of law. Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991).

## III. Discussion

### A. Defining Plaintiff's Claim

At oral arguments, defendant described plaintiff's cause of action as a moving target. The court, *infra*, has recommend that plaintiff's final Motion to Amend or Supplement Complaint be granted, even though it was filed at the tail end of the time allowed for briefing. While the issues in this case have been a moving target, as defendant contends, the court also agrees with counsel for plaintiff that this type of action is an evolving matter and that the process has narrowed the issues into sharper focus. Clearly, the only claim that remains is plaintiff's fourteenth-amendment claim, and the court's initial inquiry is whether that claim is based on past events, the possibility of future events, or a combination thereof.

A brief history of plaintiff's claims in this action is set forth in order to determine the parameters of what claim remains or is asserted through the final amendment. In March 1998 plaintiff filed an extensive complaint asserting claims under the fourth and fourteenth amendments. The fourth-amendment claim has been dismissed; all that remains is the fourteenth-amendment claim. Originally, that claim was based upon allegations that the Charlotte-Mecklenburg Police Department had a policy "to withhold exculpatory and other material evidence from the District Attorney," Complaint at ¶ 88, which subjected plaintiff to the following:

> prosecution based upon a misinformed decision by the District Attorney, and [one which] denied [plaintiff] access to material and exculpatory evidence during the proceedings against him, in violation of plaintiff's due process rights.

Complaint at ¶ 90. Plaintiff then claimed that he had been injured "through the wrongful initiation and continuation of the charges against him" based on the alleged deliberate withholding of exculpatory material from the district attorney. In his recent response to defendant's Motion for Judgment on the Pleadings, plaintiff

5

contends that "[c]ontrary to [defendant's] assertions, plaintiff's remaining claim for declaratory and injunctive relief has nothing to do with the indictment that was brought in 1994 and dismissed in 1995. Nor does it have anything to do with any claimed right to be free of indictment in the future." Response at 25.

Plaintiff's argument appears to be in recognition that the final decision of the North Carolina Superior Court--finding the prior prosecution supported by probable cause--clearly forecloses any claim for relief based on the prior prosecution. Plaintiff's claim, therefore, has evolved into one for declaratory and injunctive relief based on what may happen to him in any future prosecution for the murder of Ms. Thomas. Considering the totality of the arguments and the amendments to pleadings, and reading all of those in a light most favorable to plaintiff, the undersigned surmises that the claim now before the court is, as follows:

> a claim for declaratory and injunctive relief, wherein plaintiff contends that his fourteenth amendment right to due process may be violated in the future if defendant's police department fails to properly record, document, preserve, and present all exculpatory and potentially exculpatory evidence to the the district attorney prior to the initiation of any criminal proceeding against him.

### B. Discussion of Plaintiff's Claim

#### 1. Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

This court's jurisdiction is limited to that provided in Article III of the United States Constitution, which has been interpreted to limit judicial review to actual cases and controversies. To satisfy the case-or-controversy requirement of Article III, a plaintiff must show that he has sustained, or is immediately in danger of sustaining, some direct injury as a result of challenged official conduct, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical. Richmond Tenants Org., Inc. v. Kemp, 956 F.2d 1300 (4th Cir. 1992). Demonstration of past exposure to illegal conduct, if unaccompanied by any

continuing, present adverse effects, does not show a present case or controversy in regard to injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95 (1983).[3]

When faced with a motion for judgment on the pleadings, the burden is on the plaintiff to show that a substantial federal question exists, not on the defendant to show the negative. Goldsmith v. Mayor of Baltimore, 845 F.2d 61 (4th Cir. 1988). A claim is insubstantial if it is patently without merit or clearly foreclosed by authoritative precedent. Hagans v. Lavine, 415 U.S. 528 (1974).

In this case, the harm foreseen by plaintiff--prospective denial of constitutional rights based on the possibility of police not turning over evidence to a prosecutor in a prosecution that has not commenced and which the state criminal trial court has not had the opportunity to remedy--is speculative in that a number of events must transpire before plaintiff could be exposed to the contemplated harm. Such a claim would be contrary to the decision in Richmond Tenants Org., Inc. v. Kemp, supra. Insofar as such claim is conditioned upon past exposure to the purportedly illegal conduct, plaintiff has not demonstrated a live case or controversy, for he cannot show, as he concedes in his brief, any present continuing adverse effects other than those which accompany all criminal defendants who are dismissed. City of Los Angeles v. Lyons, supra. The undersigned must conclude that no claim or controversy exists, for plaintiff's claim based on prospective harm is hypothetical, and he cannot show any anomalous adverse effects from the prior prosecution. The undersigned, therefore, will recommend that defendant's Motion for Judgment on the Pleadings be granted for lack of jurisdiction.

### 2. Rule 12(b)(6): Failure to State a Cause of Action

In the alternative to resolution of this matter at the threshold level of jurisdiction, the court has considered whether plaintiff has stated a claim actionable under Section 1983. If a substantial federal question arguably is absent, the

---

[3] See also Rizzo v. Goode, 423 U.S. 362 (1976); O'Shea v. Littleton, 414 U.S. 488 (1974); Bryant v. Cheney, 924 F.2d 525 (4th Cir. 1991); Buie v. Jones, 717 F.2d 925 (4th Cir. 1983).

preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to Rule 12(b)(6). Plumer v. Maryland, 915 F.2d 927, 932 n.5 (4th Cir. 1990).

While jurisdiction is always a threshold concern, the nature of the complaint has focused the court on whether plaintiff states a cause of action under Section 1983. If accepted, plaintiff's argument--that he has an enforceable right to have all Brady-type material presented to the prosecutor and to a grand jury before an indictment is sought and would, therefore, have the right to have police preserve all such evidence as it is discovered--would be giant step towards parity and congruity in the criminal justice system. It is, however, a right finding no reference in the United States Constitution (or the amendments thereto), any statutory authority, or any caselaw. Indeed, the caselaw is to the contrary. In addressing a similar claim, the United States Court of Appeals for the Seventh Circuit held, as follows:

> The plaintiffs merely claim that the defendants have acted in "bad faith" in allegedly withholding exculpatory evidence contained in "street files" and that this, in and of itself, constitutes a sufficient "extraordinary circumstance" to grant equitable relief. We disagree . . . . Clearly, if we were to issue a preliminary injunction restraining the defendants from maintaining "street files" or requiring the defendants to preserve all investigatory notes and memos traditionally placed in "street files," we would expose the plaintiff's ongoing "criminal prosecutions to insupportable disruption. . . ." This opening of the proverbial "Pandora's box" would subject every felony trial prosecuted in the Cook County Circuit Court system to the time-consuming scrutiny of the Federal district court. The effect would be to stay, disrupt, unduly delay, and interfere with state criminal proceedings. . . .

Palmer v. City of Chicago, 755 F.2d 560, 575 (7th Cir. 1985).

In this case, plaintiff indicates in his amended complaint that he seeks "a declaration by the Court of the Charlotte-Mecklenburg Police Department's due process obligations under Brady. . ." to "document, record and preserve exculpatory evidence." Amended Complaint, at ¶ 125 & Plaintiff's Response at 28-29. The decision in Brady v. Maryland, 373 U.S. 83 (1963), and its progeny do not provide a criminal defendant an absolute right to all potentially exculpatory evidence, regardless of materiality. Instead, it provides a remedy where a criminal defendant

can show that there is a reasonable probability that he would not have been convicted if the state had disclosed the exculpatory evidence. United States v. Bagley, 473 U.S. 667 (1985). The duty to disclose applies whether or not the prosecutor or police have the information. Boone v. Paderick, 541 F.2d 447 (4th Cir. 1976), cert. denied, 430 U.S. 959 (1977). The failure of the state to preserve potentially exculpatory evidence does not constitute a denial of due process unless the defendant can show bad faith on the part of the police. Arizona v. Youngblood, 488 U.S. 51 (1988). To be discoverable, the evidence must be material; and to meet that standard, the evidence must possess exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. California v. Trombetta, 467 U.S. 479 (1984).

What plaintiff seeks in this case is injunctive relief, requiring the preservation and disclosure (at least to the prosecutor) of Brady material before criminal process even issues. The fundamental problem with such a request is that it puts the cart before the horse, because what is Brady is dependent upon all the circumstances of the case: "Our cases make clear that '[t]he proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt,' and that a State's failure to turn over (or preserve) potentially exculpatory evidence therefore 'must be evaluated in the context of the entire record.'" Arizona v. Youngblood, supra, at 60 (citing United States v. Agurs, supra, at 112). The undersigned, therefore, must find that plaintiff has failed to state a claim under the fourteenth amendment to the United States Constitution because

(1) the fair-trial rights enumerated under Brady and its progeny are limited in temporal proximity to a "meaningful opportunity to prepare for trial" and, therefore, cannot be extended to pre-indictment review by the prosecutor or to proceedings before the grand jury; and

(2) Section 1983 does not encompass claims for the prospective, injunctive enforcement of rights that do not exist.

Inasmuch as plaintiff has failed to state a cognizable claim, the undersigned will recommend judgment on the pleadings based on Rule 12(b)(6).

### 3. Abstention

As an additional alternative basis for decision, the court has considered the doctrine of abstention discussed in Younger v. Harris, 401 U.S. 37 (1971), commonly referred to as "Younger abstention." The doctrine provides that absent extraordinary circumstances involving great and immediate threat to federally protected rights, such as bad-faith prosecution, a patently unconstitutional statute, or a biased state tribunal, a federal court may not award declaratory or injunctive relief that would affect pending state criminal proceedings. Moore v. Sims, 442 U.S. 415 (1979).

The Court in Younger held that there was a "longstanding [sic] public policy against federal court interference with state court proceedings," particularly state criminal proceedings. Younger v. Harris, supra, at 43. Basic principles of federalism "[counsel] restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." Id., at 46 (citing Fenner v. Boykin, 271 U.S. 240, 243-244 (1926)). A federal court may relax its deference to the state criminal process only where "'exceptional circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it . . . ." Kyler v. Helfant, 421 U.S. 117, 124 (1975). The undisputed state-court record before this court indicates that it was the state trial judge's diligent, *in-camera* review of the state's files that led to the discovery of the Marion Gales evidence, which the judge then determined was Brady material. As the Court found in Arizona v. Youngblood, supra, what is Brady can be determined only in the context of the indictment and the "entire record," id., and there is simply no better place for

that determination to be made than the criminal trial court. The state court is not only *capable* of addressing the federal constitutional issue under Brady, but has proved itself adept at such task. The doctrine of abstention under Younger, therefore, would apply in this case, inasmuch as plaintiff cannot show any exceptional circumstance. The undersigned will further recommend that the Motion for Judgment on the Pleadings be granted based on Younger abstention.

### 4. Res Judicata

The principles of *res judicata* and collateral estoppel apply to civil-rights actions. Allen v. McCurry, 449 U.S. 90 (1980). The essential elements of *res judicata* are a final judgment on the merits in the earlier suit, identity of the causes of action in the two suits, and identity of the parties in the actions. Keith v. Aldridge, 900 F.2d 736 (4th Cir. 1990).

All of plaintiff's claims against defendant arise out of the same set of facts in the state civil action, there exists an identity of the parties, a final judgment was reached, and plaintiff could have brought this claim in the state proceeding under Section 1983's concurrent jurisdiction. (Failure to raise such claims in the earlier action prevents assertion of such claims in this action. Guess v. Board of Medical Examiners of North Carolina, 967 F.2d 998 (4th Cir. 1992)).

Plaintiff first argues that the claim, as it is now before the court under the amended complaint, is a separate transaction, in that it may occur in the future. The undersigned finds that the "new" claim is nothing more than a reworking of the earlier claim, which is based on the same nucleus of operative facts--the purported failure of defendant to train officers properly on the preservation and disclosure of exculpatory evidence. Plaintiff's ability to bring this suit against a municipal defendant is, at it must be, premised on an allegation that the constitutional wrong was based on an extant policy or practice of the municipality, in accordance with Monell v. Department of Social Servs., 436 U.S. 658 (1978). Plaintiff could have brought in a single lawsuit all of his claims against the defendant relating to any

prosecution or potential prosecution. Plaintiff's claims in North Carolina state court have been dismissed, and his claims herein must also be dismissed.

Finally, plaintiff argues that the stipulation of dismissal entered into by the parties, which dismissed plaintiff's fourth-amendment claim, somehow waived defendant's ability to assert *res judicata*. A reading of the four corners of that stipulation does not indicate any intention of a waiver of such defense. Inasmuch as all parties were well-represented in that stipulation, the undersigned can only conclude that if such a waiver was intended, it would have been set out explicitly. The undersigned, therefore, will recommend in the alternative that such claim be dismissed based on the doctrine of *res judicata*.

### 5. Mootness

To remedy the foreseen ill, plaintiff seeks "a general requirement that appropriate training and procedures be put into effect." Amended Complaint, at ¶ 126. An actual controversy must exist at all stages of review, not merely at the time the complaint is filed. Steffel v. Thompson, 415 U.S. 452 (1974). A plaintiff must show (i) an actual or threatened injury resulting from defendant's conduct, (ii) that the injury is traceable to challenged conduct of defendant, and (iii) that the injury is capable of being redressed by a favorable decision against the defendant. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). Plaintiff's demand is moot, because defendant's police department has already adopted and implemented "training and procedures" that far exceed any minimum standard that would be "appropriate." Exhibits B and C to the City's Injunction Response; Exhibit. D to the City's Supplement to its Injunction Response filed on October 18, 2000. It appearing that the injunctive relief sought has already been implemented by defendant voluntarily, the matter is moot.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that plaintiff's Motion to Amend or Supplement Complaint be **ALLOWED**, and after consideration of such amendment (as has herein been accomplished), that defendant's Motion for Judgment on the Pleadings be **ALLOWED** for the reasons discussed above.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

This Memorandum and Recommendation is entered in response to defendant's Motion for Judgment on the Pleadings (#__) and plaintiff's Motion to Amend or Supplement Complaint (#__).

This 26th day of October, 2001.

MAX O. COGBURN, JR.
UNITED STATES MAGISTRATE JUDGE

United States District Court
for the
Western District of North Carolina
October 26, 2001

* * MAILING CERTIFICATE OF CLERK * *

Re:  3:98-cv-00122

True and correct copies of the attached were mailed by the clerk to the following:

　　　David S. Rudolf, Esq.
　　　Rudolf & Maher, P.A.
　　　312 W. Franklin St.
　　　Chapel Hill, NC  27516

　　　Thomas K. Maher, Esq.
　　　Rudolf & Maher, P.A.
　　　312 W. Franklin St.
　　　Chapel Hill, NC  27516

　　　Jim D. Cooley, Esq.
　　　Womble, Carlyle, Sandridge & Rice
　　　301 S. College St.
　　　3300 One First Union Center
　　　Charlotte, NC  28202-6025

　　　G. Michael Barnhill, Esq.
　　　Womble, Carlyle, Sandridge & Rice
　　　301 S. College St.
　　　3300 One First Union Center
　　　Charlotte, NC  28202-6025

　　　James P. Cooney, Esq.
　　　Kennedy, Covington, Lobdell & Hickman
　　　Bank of America Corporate Center
　　　100 No. Tryon St., Suite 4200
　　　Charlotte, NC  28202-4006

```
cc:
Judge                        ( )
Magistrate Judge             (X)
U.S. Marshal                 ( )
Probation                    ( )
U.S. Attorney                ( )
Atty. for Deft.              ( )
Defendant                    ( )
Warden                       ( )
Bureau of Prisons            ( )
Court Reporter               ( )
Courtroom Deputy             ( )
Orig-Security                ( )
Bankruptcy Clerk's Ofc.      ( )
Other_____         ( )
```

Date: /0/26/01

Frank G. Johns, Clerk

By: _____
　　　Deputy Clerk